## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LOUIS GREGORY VENNING,<br><br>Defendant. | CR  19–152–BLG–DLC<br><br><br><br>ORDER |

The Court has received the presentence investigation report prepared in the above-captioned matter.  (*See* Docs. 161; 186; 201.)  There are 32 objections—31 leveled by Venning and 1 leveled by the United States.  *See* Fed. R. Crim. P. 32(f). To focus the issues requiring resolution at sentencing, the Court will categorize the outstanding objections, and, where possible, preliminarily resolve them.[1]

### OBJECTIONS

As noted above, Venning has leveled 31 objections to the PSR.  The Court summarizes them as follows:

    (1)    Objection to PSR ¶ 24 (now ¶28)—Objection to PSR's description of Venning's interactions with Jane Doe 10 (PSR Addendum at 6);

---

[1] In resolving certain objections below, the Court does not in any way intend to deprive a party of its ability to offer argument on preserved objections at sentencing.  Fed. R. Crim. P. 32(i)(1)(C).  Formal resolution of objections to the presentence investigation report will occur at sentencing, as provided for in the Federal Rules of Criminal Procedure.  Fed. R. Crim. P. 32(i)(3)(B).  Absent compelling argument to the contrary, however, the Court does not intend to depart from the proposed resolution of any specific objection outlined in this Order.

(2)     Objection to PSR ¶ 30 (now ¶ 34)—Objection to PSR's description of Venning's treatment of Jane Doe 11 (PSR Addendum at 6);

(3)     Objection to PSR ¶ 33 (now ¶ 37)—Objection to PSR's statement that B.M. was involved in commercial sex (PSR Addendum at 6);

(4)     Objection to PSR ¶ 35 (now ¶ 39)—Objection to PSR's statement regarding Venning's contact with law enforcement in Billings and Venning's knowledge regarding Jane Doe 15's age (PSR Addendum at 6);

(5)     Objection to PSR ¶ 36 (now ¶ 40)—Objection to PSR's statement that Venning had sexual relations with Jane Doe 5 or that he had firearms around Jane Does 5 and 15 (PSR Addendum at 6);

(6)     Objection to PSR ¶ 37 (now ¶ 41)—Objection to PSR's statement that Venning met with Jane Doe 5 in Billings in 2014 (PSR Addendum at 6);

(7)     Objection to PSR ¶ 38 (now ¶ 42)—Objection to PSR's statement that Venning threatened Jane Doe 2 (PSR Addendum at 6);

(8)     Objection to PSR ¶ 39 (now ¶ 43)—Objection to PSR's statements regarding the timing of Venning's interactions with Jane Doe 6 (PSR Addendum at 6);

(9)     Objection to PSR ¶ 40 (now ¶ 44)—Objection to PSR's ostensible omission of certain factual details regarding Venning's interactions with Jane Doe 6 (PSR Addendum at 6);

(10)    Objection to PSR ¶ 41 (now ¶ 45)—Objection to PSR's statements regarding how Jane Doe 6's relationship with Venning ended (PSR Addendum at 7);

(11)    Objection to PSR ¶ 42 (now ¶ 46)—Objection to PSR's statements that Venning provided Jane Doe 7 with drugs (PSR Addendum at 7);

(12)    Objection to PSR ¶ 43 (now ¶ 47)—Objection to PSR's statements that Venning withheld Jane Doe 7's earnings or forced her to have sex

with him (PSR Addendum at 7);

(13)    Objection to PSR ¶ 44 (now ¶ 48)—Objection to PSR's statements
        regarding the timing of Venning's interactions with Jane Doe 12 (PSR
        Addendum at 7);

(14)    Objection to PSR ¶ 46 (now ¶ 50)—Objection to PSR's implication
        that Venning used "force, fraud, or coercion, or drug use," to get Jane
        Doe 8 to engage in sex work (PSR Addendum at 7);

(15)    Objection to PSR ¶ 47 (now ¶ 51)—Objection to entire paragraph,
        including its statements regarding Venning's treatment of Jane Doe 8,
        such as threatening to kill her and pointing a gun at her (PSR
        Addendum at 7);

(16)    Objection to PSR ¶ 48 (now ¶ 52)—Objection to PSR's statements
        that Jane Doe 8 saw Venning with "all his drugs spread out in
        different colored baggies," that both Jane Doe 6 and Venning shot up,
        and that she thought they had involuntarily injected her with drugs
        (PSR Addendum at 7);

(17)    Objection to PSR ¶ 49 (now ¶ 53)—Objection to PSR's statement that
        Venning provided Jane Doe 1 with meth, heroin, and ecstasy (PSR
        Addendum at 7);

(18)    Objection to PSR ¶¶ 50–52 (now ¶¶ 54–56)—Objection to PSR's
        rendition of Venning's relationship with Jane Doe 1, including that
        "he used drugs, force, fraud, or coercion," against her and raped her
        several times (PSR Addendum at 7);

(19)    Objection to PSR ¶ 63 (now ¶ 67)—Objection to PSR's statements
        regarding Venning's relationship with Jane Doe 9 (PSR Addendum at
        8);

(20)    Objection to PSR ¶ 64 (now ¶ 68)—Objection to PSR's omission of
        Jane Doe 13's statement that she never saw Venning with firearms
        (PSR Addendum at 8);

(21)    Objection to PSR ¶ 65 (now ¶ 69)—Objection to PSR's statement that
        Venning communicated with Jane Doe 14 between 2013 and 2015

3

(PSR Addendum at 8);

(22)   Objection to PSR ¶ 69 (now ¶ 73)—Objection to PSR's statement that Venning told SA Walters he texted A.H.'s daughter to see whether she was "vulnerable for sex trafficking" (PSR Addendum at 8);

(23)   Objection to PSR ¶¶ 71, 97 (now ¶¶ 75, 101)—Objection to PSR's attribution of "at least 50 grams, but not less than 100 grams of cocaine" to Venning (PSR Addendum at 8);

(24)   Objection to PSR ¶ 92 (now ¶ 96)—Objection to application of 4 level enhancement pursuant to § 2G1.1(b)(1) (PSR Addendum at 8);

(25)   Objection to PSR ¶¶ 103, 105 (now ¶¶ 107, 109)—Objection to unit analysis based on Objection 24 (PSR Addendum at 8);

(26)   Objection to PSR ¶ 107 (now ¶ 111)—Objection to application of Repeat and Dangerous Sex Offender Against Minors enhancement pursuant to § 4B1.5(a)(1)(B)(i) (PSR Addendum at 8);

(27)   Objection to PSR ¶ 120 (now ¶ 124)—Objection to PSR's inclusion of Jane Doe 5's statements regarding the events giving rise to Venning's 2012 first degree promoting prostitution conviction in Missouri (PSR Addendum at 8);

(28)   Objection to PSR ¶ 148 (now ¶ 152)—Objection to PSR's statement that Venning used cocaine with Jane Doe 3 or "shot up" with Jane Doe 8 (PSR Addendum at 8);

(29)   Objection to PSR ¶ 161 (now ¶ 168)—Objection to PSR's final guideline calculation of 360 to life based on 37 TOL and VI Criminal History Category.  This objection relates to sustainment of Venning's 24–26th objections.  Venning argues when those objections are sustained, he has a 33 TOL, with a VI Criminal History Category, resulting in a guideline range of 235 to 292 months.  (PSR Addendum at 8–9);

(30)   Objection to PSR ¶¶ 78, 180, 204—Objection to restitution award of $112,137.20 to Jane Does 1–15 (PSR Addendum at 9–10); and

4

(31)   Objection to PSR ¶ 123—Objection to scoring of 2 criminal history points for Venning's 2011 PFMA conviction, pursuant to § 4A.1.1(c) (PSR Addendum to Updated PSR at 1).

In addition, the United States has leveled one objection—targeting the original PSR's 2-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a). (PSR Addendum at 1.)  These 32 objections can be analytically split into three categories: (1) objections to factual recitation of the offense or other relevant conduct (Venning's Objections 1–22, 27–28); (2) objections to the guideline calculation (Venning's Objections 23–26, 29, 31; United States' Objection 1); and (3) objection to the proposed restitution amount (Venning's Objection 30).  The Court addresses, and in some cases, preliminarily resolves, these objections as follows.

## ANALYSIS

### I.      Factual Objections (Venning's Objections 1–22, 27–28).

A district court commits Rule 32 error when the defendant objects to the PSR's factual rendition of his underlying offense conduct, and the district court fails to either "explicitly rule on" objections or "state that the controverted issues would not be taken into account at sentencing."  *United States v. Herrera-Rojas*, 243 F.3d 1139, 1142–43 (9th Cir. 2001); *United States v. Petri*, 731 F.3d 833, 840 (9th Cir. 2013) (noting that factual objections to a PSR may very well "counsel for a finding by the sentencing judge").  Many of Venning's factual objections involve

important aspects of the nature and circumstances of his offense and inform the formulation of an appropriate sentence.

At this point, the factual record is not sufficiently developed to permit this Court to resolve any of Venning's factual objections. As such, the Court intends to hear evidence and argument at sentencing, after which it will resolve such objections based on the preponderance of the evidence. *See United States v. Mejia-Luna*, 562 F.3d 1215, 1221 (9th Cir. 2009) ("A district court generally applies the preponderance of the evidence standard of proof when finding facts at sentencing.").

## II.   Guideline Objections.

### A.   Venning's Objection 23—Application of § 2D1.1(a)(5), (c)(13) to Obtain a Base Offense Level for Count XIII.

Count XIII of the Second Superseding Indictment charges Venning with possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). Nobody disputes the base offense level for Count XIII is derived through application of § 2D1.1(a)(5). Under this provision, a base offense level for Count XIII is "the offense level specified in the Drug Quantity Table set forth in subsection (c)." *Id.* This subsection assigns an offense level for drug possession offenses based on the type and amount of drug possessed. § 2D1.1(c). In this case, Officer Gasiewicz concluded Venning possessed "at least 50 grams, but less than 100 grams of cocaine" and assigned a base of offense level of 14 for Count

6

XIII, pursuant to § 2D1.1(c)(13).  PSR ¶¶ 75, 101.

Venning's objection states "[t]he Defendant disputes the 50-gram estimation and states that under 50 grams is a more conservative estimate."  PSR Addendum at 8.  The United States responds that "the 50 grams of cocaine attributed to Mr. Venning is appropriate and supported by the discovery in the case," and expresses its intent to offer testimony on this issue at sentencing.  *Id.* at 2.  Officer Gasiewicz also provided a detailed response outlining her efforts to calculate drug quantity based on the statements of Jane Does 1, 3–4, 7, and 12.  *Id.* at 11.

In cases like Venning's, where there was no formal seizure of drugs, this Court must "approximate the quantity of the controlled substance."  Application Note 5 to § 2D1.1.  In the Ninth Circuit, "[a]pproximations of drug quantity must meet three criteria."  *United States v. Kilby*, 443 F.3d 1135, 1141 (9th Cir. 2006). First, the United States must "prove the approximate quantity by a preponderance of the evidence," meaning, this Court "must conclude that the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible."  *Id.*  Second, "the information which supports an approximation must possess sufficient indicia of reliability to support its probable accuracy."  *Id.*  Finally, "since the sentence depends in large part upon the amount of drugs and approximation is by definition imprecise, the district court must err on the side of caution in approximating the

7

drug quantity." *Id.*

As with the factual objections outlined above, the Court does not have enough information to resolve Venning's drug quantity objection one way or another. The Court will hear evidence and argument on this issue at sentencing.

### B. Venning's Objections 24–25—Application of Four Level Enhancement Under § 2G1.1(b)(1).

In the original PSR, Officer Gasiewicz applied § 2G1.1(b)(1) to enhance the base offense level for Count VII from 14 to 18. Nobody disputes that the base offense level for Venning's conviction under Count VII is 14. § 2G1.1(a)(2). But when (a)(2) is applied *and* "the offense involved fraud or coercion," the offense level is increased by four levels. § 2G1.1(b)(1). Venning originally objected to application of this enhancement, arguing that Jane Doe 9 voluntarily engaged in commercial sex. PSR Addendum at 8. In response, Officer Gasiewicz noted that she incorrectly examined Venning's conduct with Jane Doe 9 as to Count VII when that count actually relates to Venning's conduct as to Jane Doe 5. *Id.* at 11. Officer Gasiewicz did not find Venning's conduct as to Jane Doe 5 to amount to "fraud or coercion," so this 4-level enhancement was removed.

The United States has responded by "reserving its right to challenge the applicability" of this specific offense characteristic at sentencing. *Id.* at 2. It does appear at least some force and/or coercion was involved in Venning's relationship with Jane Doe 5, PSR ¶¶ 38–41 (noting that Venning was abusive to Jane Doe 5

8

and that he "slapp[ed], strangl[ed], and punch[ed] her just to have control"), but it is unclear whether it rose to a level sufficient to support application of § 2G1.1(b)(1).  The Court will need to hear argument and evidence on this issue if the United States argues at sentencing the enhancement was incorrectly removed.[2]

### C. Venning's Objection 26—Application of § 4B1.5 Repeat and Dangerous Sex Offender Against Minors Enhancement.

Section 4B1.5 establishes a career offender enhancement for repeat and dangerous sex offenders against minors and provides:

(a)    In any case in which the defendant's instant offense of conviction is a covered sex crime, §4B1.1 (Career Offender) does not apply, and the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction:

    (1)    The offense level shall be the greater of:

        (A)    the offense level determined under Chapters Two and Three; or

        (B)    the offense level from the table below decreased by the number of levels corresponding to any applicable adjustment from §3E1.1 (Acceptance of Responsibility):

| Offense Statutory Maximum | | Offense Level |
|---|---|---|
| (i) | Life | 37 |

---

[2] Objection 25 flows from Objection 24 and involves the resulting unit analysis in PSR ¶¶ 107, 109.  Because Officer Gasiewicz agreed with Venning on the merits, this unit analysis objection was also resolved in his favor.  If the United States challenges removal of the § 2G1.1(b)(1) enhancement at sentencing, and the Court finds it applies, it will address this objection as well.

| (ii) | 25 years or more | 34 |
|---|---|---|
| (iii) | 20 year or more, but less than 25 years | 32 |
| (iv) | 15 year or more, but less than 20 years | 29 |
| (v) | 10 years or more, but less than 15 years | 24 |
| (vi) | 5 years or more, but less than 10 years | 17 |
| (v) | More than 1 year, but less than 5 years | 12 |

    (2)    The criminal history category shall be the greater of: (A) the criminal history category determined under Chapter Four, Part A (Criminal History); or (B) criminal history Category V.

(b)    In any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:

    (1)    The offense level shall be **5** plus the offense level determined under Chapters Two and Three.  However, if the resulting offense level is less than level **22**, the offense level shall be level **22**, decreased by the number of levels corresponding to any applicable adjustment from §3E1.1.

    (2)    The criminal history category shall be the criminal history category determined under Chapter Four, Part A.

§ 4B1.5.  Officer Gasiewicz applied subsection (a), concluding that: (1) Count VI is a "covered sex crime;" (2) the § 4B1.1 career offender enhancement does not apply; and (3) Venning committed Count VI "subsequent to sustaining at least one

10

sex offense conviction," specifically his 2012 Missouri conviction for first degree promoting prostitution (*see* PSR ¶ 124).  PSR ¶ 111.  Because the statutory maximum for Count VI is life, Officer Gasiewicz assigned an offense level of 37.

Venning objects to Officer Gasiewicz's third conclusion, arguing that his 2012 Missouri conviction does not constitute a "sex offense conviction," within the meaning of § 4B1.5(a).  PSR Addendum at 8.  The United States strenuously argues in favor of applying § 4B1.5(a), and contends that even if it does not apply, the enhancement found at § 4B1.5(b) would be applicable, resulting in an offense level of 39, not 37.  PSR Addendum at 2–5.  Ultimately adopting a different analysis than the United States, the Court agrees § 4B1.5(a) applies in this case.

The dispute around application of § 4B1.5(a) focuses on whether Venning's 2012 Missouri conviction for promoting prostitution is a "sex offense conviction," within the meaning of that guideline provision.  Application note 3 teaches that the term "sex offense conviction," as used in § 4B1.5(a), means "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B), if the offense was perpetrated against a minor."  In relevant part, § 2426(b) provides that:

> (1)    the term "prior sex offense" means a conviction for an offense
>
>     (A)    under this chapter, chapter 109A, chapter 110, or section 1591; or
>
>     (B)    under State law for an offense consisting of conduct that would have been an offense under a

> > chapter referred to in subparagraph (A) if the
> > conduct had occurred within the special maritime
> > and territorial jurisdiction of the United States.

18 U.S.C. § 2426(b).  The United States contends Venning's conduct, as it relates

to the 2012 Missouri conviction, amounts to a violation of 18 U.S.C. § 1591.  PSR

Addendum at 3.

> This statute provides:

> (a)    Whoever knowingly—

> > (1)    in or affecting interstate or foreign commerce, or within
> > the special maritime and territorial jurisdiction of the
> > United States, recruits, entices, harbors, transports,
> > provides, obtains, advertises, maintains, patronizes, or
> > solicits by any means a person; or

> > (2)    benefits, financially or by receiving anything of value,
> > from participation in a venture which has engaged in an
> > act described in violation of paragraph (1),

> > knowing, or, except where the act constituting the
> > violation of paragraph (1) is advertising, in reckless
> > disregard of the fact, that means of force, threats of force,
> > fraud, coercion described in subsection (e)(2), or any
> > combination of such means will be used to cause the
> > person to engage in a commercial sex act, or that the
> > person has not attained the age of 18 years and will be
> > caused to engage in a commercial sex act, shall be
> > punished as provided in subsection (b).

18 U.S.C. § 1591.  Before addressing whether Venning's prior 2012 Missouri

conviction involves conduct prohibited by § 1591, it is important to first address

how that assessment should be made.

12

This threshold issue involves application (or non-application) of the so-called categorical approach.  As enumerated by the Sixth Circuit, this issue can be stated as follows:

> Should the court use a categorical approach and look only to the statutory definitions—i.e., the elements of the state crime to see if they align with the elements of a listed federal offense?
>
> Or should it look to the particular facts underlying the state-law conviction and ask whether those would violate a federal offense listed in § 2426(b)(1)(A)?

*United States v. Krishen*, 2021 WL 5873157, *2 (6th Cir. 2021) (ultimately not reaching the question) (internal quotation marks, alterations, and citations omitted). Circuit courts directly addressing the question are split.  *United States v. Smith*, 336 Fed. App'x 978, 983–85 (11th Cir. 2009) (rejecting categorical approach); *United States v. Dahl*, 833 F.3d 345, 349–53 (3d Cir. 2016) (adopting categorical approach); *United States v. Wikkerink*, 841 F.3d 327, 331–36 (5th Cir. 2016) (adopting modified categorical approach).

The United States argues the categorical approach is inapplicable, citing *United States v. Breitweiser*, 357 F.3d 1249 (11th Cir. 2004).  PSR Addendum at 4.[3]  In *Breitweiser*, the Eleventh Circuit rejected adoption of the categorical approach when applying the "prior sex offense" enhancement found at 18 U.S.C. §

---

[3] Notably, the United States citation to this case incorrectly indicates it was issued by the Ninth Circuit, not the Eleventh Circuit.  PSR Addendum at 4.

2247(a).  *Id.* at 1254–55.  The basis for this conclusion is that the enhancement at issue, which heightens penalties when a defendant has been convicted of a "prior sex offense," which means "an offense consisting of conduct that would have been an offense" under other provisions of federal law, "focuses on the defendant's conduct, not on the elements of the previous offense."  *Id.* at 1255.  *Smith* applied *Breitweiser*'s reasoning in the specific § 4B1.5(a) context.  336 Fed. App'x at 984–85.

Ultimately, the Court finds the Third Circuit's reasoning in *Dahl* far more compelling than *Breitweiser*'s and more consistent with the Ninth Circuit authority on the issue.  In *Dahl* the Third Circuit concluded that the categorical approach governs whether a defendant has a prior sex offense conviction within the meaning of § 4B1.5(a).  833 F.3d at 349–353.  This conclusion was based on a thorough examination of prior Supreme Court precedent that *Breitweiser* notably fails to wrestle with.  This includes *Taylor v. United States*, 495 U.S. 575 (1990), *Descamps v. United States*, 133 S.Ct. 2276 (2013), *Johnson v. United States*, 135 S.Ct. 2551 (2015), and *Mathis v. United States*, 136 S.Ct. 2243 (2016).  *Dahl*, 833 F.3d at 349–50.

These cases all involve application of ACCA, but as *Dahl* points out, ACCA uses similar language to that found in § 2426(b).  *Compare* 18 U.S.C. § 924(e) (enhancing sentences in § 922(g) prosecutions where defendant has "three previous

convictions . . . for a violent felony" which includes "any crime" that "*involves conduct* that presents a serious potential risk of physical injury to another") (emphasis added) to 18 U.S.C. § 2426 (enhancing sentences based on "a prior sex offense conviction" which includes offenses "under state law for an offense *consisting of conduct* that would have been an offense" under other provisions of federal law) (emphasis added).  If ACCA's specific reference to conduct is insufficient to warrant rejection of the categorical approach under binding Supreme Court precedent, *Taylor*, 495 U.S. at 600, the same must be true for § 2426, *Dahl*, 833 F.3d at 350–51.

The closest Ninth Circuit authority on point appears to endorse usage of the categorical approach in the § 4B1.5 context.  *See United States v. Schlake*, 178 Fed. App'x 755 (9th Cir. 2006).  In *Schlake*, a defendant challenged the enhancement of his sentence under § 4B1.5(a) based on a prior state court conviction for endangering the welfare of a child under Montana Code Annotated § 45-5-622(2)(b)(ii).  *Id.* at 757.  The Ninth Circuit held that application of this enhancement was erroneous because "a violation of M.C.A. 45-5-622(2)(b)(ii) is not necessarily a violation of" one of the offenses listed in § 2426(b).  *Id.*  This is an identical analysis to what the categorical approach requires.  In short, the Court will, contrary to the United States' argument, determine whether Venning's 2012 Missouri conviction equates to a violation of § 1591 through application of the

15

categorial approach.

Under the categorical approach, this Court looks at the elements of the crime proscribed by 18 U.S.C. § 1591, and the elements of the Venning's 2012 Missouri conviction for promoting prostitution. *See Rendon v. Holder*, 764 F.3d 1077, 1082–83 (9th Cir. 2014) (citing *Descamps*, 133 S.Ct. at 2283). If the 2012 Missouri promoting prostitution offense "has the same elements as, or is narrower than," the elements of a § 1591 offense, then this state court conviction can be used to enhance Venning's sentence pursuant to § 4B1.5(a). *Id.* at 1083. If, on the other hand however, the "state statute sweeps more broadly than" § 1591, then Venning's prior state court conviction cannot be used to enhance his sentence. *Id.* Accordingly, a comparison of the elements is in order.

The elements of a § 1591 offense can be outlined as follows:

First, the defendant knowingly [recruited] [enticed] [harbored] [transported] [provided] [obtained] [advertised] [maintained] [patronized] [or] [solicited] a person to engage in a commercial sex act;

Second, the defendant [knew] [was in reckless disregard of the fact] that [means of force, threats of force, fraud, coercion or any combination of such means would be used to cause the person to engage in a commercial sex act] [or] [that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act]; and

Third, the defendant's acts were [in or affecting interstate or foreign commerce] [within the special maritime and territorial jurisdiction of the United States].

9th Cir. Manual of Model Criminal Jury Instrs. § 20.25 (2022 ed.)  Under

Missouri law in 2012,[4] a defendant commits the offense of first-degree

promoting prostitution if he knowingly: (1) promotes prostitution (2) of a

person less than sixteen years old.  Mo. Rev. Stat. § 567.050.1(2) (2012).[5]

Upon comparing the two offenses, the Court concludes they are

categorical matches.  As to the first element, both require the defendant's

knowing promotion (or, as used in § 1591, recruitment, enticement,

harboring, etc.) of prostitution (or as used in § 1591, commercial sex act).

As to the second element, both require defendant to know the victim is under

the age of 16.  Although § 1591 sets the age at 18, this just means the

Missouri statute is narrower in this respect, which does not prevent the

finding of a categorical match.  *Rendon*, 764 F.3d at 1082–83.

Consequently, the Court concludes that Venning has a prior sex offense

conviction involving a minor within the meaning of § 4B1.5(a) and will

---

[4] Because Venning committed this offense in November 2012, the Court must examine the elements of that crime as they existed at that time.  *See Dahl*, 833 F.3d at 354 (citing *Taylor*, 495 U.S. at 598).

[5] Importantly, this statute also characterizes other conduct as promoting prostitution.  *See* Mo. Rev. Stat. § 567.050.1(1) ("compelling a person to enter into, engage in, or remain in prostitution").  This renders it "divisible" (i.e. "comprises multiple, alternative versions of the crime").  *Descamps*, 570 U.S. at 262.  Because of this, the Court would normally need to undertake the "modified categorical approach," through which it "look[s] beyond the statutory elements to 'the charging paper and jury instructions'" to determine which version the defendant was convicted of, before reverting back to the categorical approach as to that version of the offense.  *Id.* at 261–62.  Because both the United States and probation office indicate the charging papers show Venning committed the version relating to individuals under the age of 16, the Court focuses its attention there.  PSR ¶ 124; PSR Addendum at 3.

overrule Venning's 26th objection.

Because of this conclusion, the Court does not address the United States' alternative argument that if § 4B1.5(a) does not apply, then § 4B1.5(b) could still apply to enhance his sentence.

### D.  Venning's Objection 31—Assignment of 2 Criminal History Points for Venning's 2011 PFMA Conviction Under § 4A1.1(b).

Venning objects to Officer Gasiewicz's assignment of 2 criminal history points to his 2011 conviction for PFMA in Billings Municipal Court. PSR Addendum to Updated PSR at 1; *see* PSR ¶ 123.  Specifically, Venning argues that because he received less than 60 days imprisonment for this offense, it should be assigned 1, not 2 criminal history points, pursuant to § 4A1.1(b), (c).  Officer Gasiewicz disagrees, pointing out that the guidelines require any revocation sentences to be added to the original term of imprisonment before assigning it a criminal history score.   PSR Addendum to Updated PSR at 1.  Because Venning had two revocations for this offense totaling 30 days each, she concluded he had 90 days of imprisonment for this offense, resulting in a score of 2.  Officer Gasiewicz is correct.

Generally, a scoreable prior conviction is assigned 2 points if the associated sentence was at least 60 days, but less than 13 months, and 1 point if the sentence was below 60 days.  §§ 4A.1(b); 4A1.2(d)(2).  But the

18

temporal length of a sentence is not assessed just by looking at the original term of imprisonment imposed.  Instead, the Court must assign a score based on "the original term of imprisonment" plus "any term of imprisonment imposed upon revocation."  § 4A1.2(k)(1).  In this case, Venning was sentenced to 1 year in jail with all but 30 days suspended on his 2011 PFMA conviction.  PSR ¶ 123.  But this sentence was also revoked two times both resulting in custodial sentences with all but 30 days suspended.  *Id.*  As such, the total term of imprisonment for this offense was 90 days, which results in a score of 2.  Venning's 31st objection will be overruled.

### E.   United States' Objection 1—Two-level Offense Level Reduction for Acceptance of Responsibility Under § 3E1.1(a).

The United States objected to Officer Gasiewicz's recommended reduction of Venning's total offense level by 2-levels for acceptance of responsibility.  PSR Addendum at 1.  The basis for this objection is the conduct giving rise to Venning's new indictment.  *Id.* (namely attempting to smuggle narcotics into the jail through use of a page from his PSR).  Officer Gasiewicz agreed and removed this offense level reduction.  *Id.* at 12; *see also* PSR ¶ 112.  The Court agrees this reduction was properly removed.

The guidelines provide for a 2-level offense level reduction when the defendant has "clearly demonstrate[d] acceptance of responsibility for his

offense." § 3E1.1(a).  The guidelines do not provide much elaboration but do indicate that although a defendant who pleads guilty before trial is generally a good candidate for this reduction "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." *Id.*, Application Note 3.  The guidelines do provide some helpful examples of what constitutes acceptance of responsibility, including "voluntary termination or withdrawal from criminal conduct or associations," or "post-offense rehabilitative efforts." *Id.*, Application Note 1(B), (G).

As the United States argues, Venning's post-guilty plea conduct is not indicative of someone who has accepted responsibility for his criminal conduct.  Based on Venning's attempt to smuggle narcotics into the jail, especially using confidential pages from his PSR, the Court finds he has not withdrawn from criminal conduct or otherwise engaged in post-offense rehabilitation efforts.  At this juncture, the Court finds an acceptance of responsibility reduction unwarranted.  Accordingly, to the extent Officer Gasiewicz response has not already resolved this objection, it will be sustained.

### F.    Venning's Objection 29—Total Offense Level Calculation.

Adjudication of Venning's 29th objection depends on how the

20

preceding guideline objections are resolved.  PSR Addendum at 8–9.

Because, as explained above, some of these objections cannot be resolved

until sentencing, the Court will resolve this objection at that time.

### III.   Venning's Restitution Objection (Objection 30).

The PSR outlines a total award of $112,137.20 in restitution, with various

amounts being paid to Jane Does 1–15, pursuant to 18 U.S.C. § 3663A.  PSR ¶¶

76–78, 180.  Venning challenges this proposed restitution amount on several

grounds, arguing:

(1)   as to Jane Does 3–4, 6–7, 10–11, restitution is improper
      because no force, fraud, or coercion was used;

(2)   as to Jane Does 1–5, 7–8, 11–15, restitution is improper
      because the restitution amount is unsupported by affidavit or
      other sufficient evidence;

(3)   as to Jane Does 2–8, 10–15, restitution is improper because
      these victims have not requested restitution; and

(4)   as to Jane Doe 9, any restitution for financial injury before July
      2019 is improper.

PSR Addendum at 9–10.[6]  The United States contends Venning's restitution

objections have no legal support and expresses its intent to prove restitution

amounts at sentencing.  *Id.* 5–6.

---

[6] Venning also levels a restitution objection as to Jane Doe 16, PSR Addendum at 10, but the
United States has not sought restitution for this victim, *id.* at 11, and none is recommended by
the probation office, PSR ¶¶ 180.  Thus, to the extent Venning levels a restitution objection as to
Jane Doe 16, it is summarily denied.

For some offenses, federal law makes restitution a mandatory and required component of the sentence imposed.  Relevant to this case, restitution must be ordered for victims of offenses proscribed by 18 U.S.C. §§ 1591, 2421, in the "full amount of the victim's losses."  18 U.S.C. §§ 1593(a), (b)(1), 2429(a), (b)(1). What constitutes the "full amount of the victim's losses" differs depending on whether the offense was committed under § 1591 or § 2421.  For § 1591 victims, the full amount of their losses includes "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim" in addition to "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under" federal minimum wage laws.  18 U.S.C. § 1591(b)(3) (cross referencing 18 U.S.C. § 2259(c)(2)).  For § 2421 victims, the full amount of their losses includes, in a very roundabout way, their "losses as determined by the court and without consideration of the economic circumstances of the defendant. 18 U.S.C. § 2429(b)(3) (cross referencing § 2259(b)(3), which cross references § 3664, which outlines the scope of restitution in (f)(1)(A)).

Both §§ 1593 and 2429, direct this Court to follow the restitution procedures set forth in §§ 3663A and 3664, when ordering restitution.  18 U.S.C. §§ 1593(b)(2), 2429(b)(2).  These provisions require the Court to order restitution for any covered offenses, along with "persons other than the victim of the offense," if

"agreed to by the parties in a plea agreement."  18 U.S.C. § 3663A(a)(3).[7]  The

United States bears the burden of establishing a victim is entitled to restitution and

the amount of their loss.  18 U.S.C. § 3664(e).  This Court must resolve disputes

regarding the proper "amount or type of restitution" by "the preponderance of the

evidence."  *Id.*

Although this Court "is not required to make explicit findings to justify its

restitution order," § 3664 "recognizes that specific findings of fact are necessary at

times and contemplates that the [Court] will set forth an explanation of its

reasoning, supported by the record, when a dispute arises as to the proper amount

of restitution."  *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008).

There is a significant amount of flexibility in determining the amount of a victim's

losses, but "§ 3664 minimally requires that facts be established by a preponderance

of the evidence," via "evidence that possesses sufficient indicia of reliability to

support its probable accuracy."  *Id.*  With these principles in mind, the Court

addresses each of Venning's restitution objections in turn.

### A.    Force, Fraud or Coercion.

As noted above, Venning objects to the proposed restitution amounts

as to Janes Does 3–4, 6–7, 10–11, on the basis that there was "no force,

---

[7] Here, Venning's plea agreement provides he agrees to pay restitution "to any and all victims of
his relevant conduct."  (Doc. 155 at 3–4.)  The United States seeks restitution for Jane Does 1–
15.  PSR ¶ 180.

fraud or coercion." PSR Addendum at 9–10. But Venning provides no legal basis for conditioning an award of restitution to these victims upon a showing of force, fraud, or coercion. By plea agreement, Venning agreed to pay restitution to "any and all victims of his relevant conduct." (Doc. 155 at 4.) There is no force, fraud, or coercion limitation.

To the extent Venning contends these Jane Does are not properly characterized as "victims," in the restitution sense, the Court finds it can largely resolve this contention after it hears evidence on Venning's factual objections. *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 927 n.10 (9th Cir. 2001) ("A victim for restitution purposes is a person who has suffered a loss caused by" the defendant's criminal conduct.).

### B.   Unsupported by Sufficient Evidence.

Venning objects to the proposed restitution amounts as to Janes Does 1–5, 7–8, 11–15, on the basis that the proposed restitution amount is insufficiently supported by an affidavit or other evidence. PSR Addendum at 9–10. As noted above, the United States bears of the burden of establishing a victim's proper restitution amount by a preponderance of the evidence. *Waknine*, 543 F.3d at 556. Such evidence must possess "sufficient indicia of reliability to support its probable accuracy." *Id.* (the "government must provide the district court with more than just general invoices ostensibly identifying the amount of their losses").

24

As an initial matter, Venning appears to assert that any victim who has not submitted an affidavit of loss cannot be awarded restitution. This is incorrect. Although affidavits are an important tool to establish restitution amounts, *see* 18 U.S.C. § 3664(d)(2)(A)(vi), (B), restitution amounts may (and sometimes must) be determined without an affidavit. *Waknine*, 543 F.3d at 557–58 (holding that although "victim affidavits will generally provide sufficient, reliable evidence to support a restitution order," they do not always contain adequate evidence to determine loss amounts). Because most of the victims cannot be located or have chosen not to participate in the restitution process, the Court can (and, indeed, must) look at non-affidavit forms of evidence to determine proper loss amounts. The United States will be responsible for proffering such evidence at the sentencing hearing.

For now, however, to the extent Venning objects to a restitution award as to Jane Does 1–5, 7–8, 11–15 on the basis that they have not submitted affidavits, it will be overruled.

### C.   Lack of Request for Restitution from Victims.

Venning objects to the proposed restitution amounts as to Janes Does 2–8, 10–15, on the basis that these specific victims have not requested restitution, either because they have not been located or elected not to participate. PSR Addendum at 9–10. Venning cites no authority for the proposition that restitution is only

properly ordered to victims who request it.   And Venning's assertion is belied by the text of relevant restitution statutes.  For example, the restitution statues require this Court to order restitution for all "victim[s] of the offense," not just victims that elect to participate in the restitution process or otherwise seek to obtain restitution in the case.  18 U.S.C. § 3663A(a)(1); *see also id.* § 3664(f)(1)(A) ("the court shall order restitution to each victim in the full amount of the victim's losses").

Moreover, the restitution statutes specifically provide that "[n]o victim shall be required to participate in any phase of" the restitution process, 18 U.S.C. § 3664(g)(1), but nowhere provides that such nonparticipation absolves the court of its obligation to order restitution as to that victim.  In other words, the Court finds the applicable restitution statutes *require* this Court to award these victims restitution.  Once Venning makes a restitution payment to these victims, the Court will "craft a solution that is consistent with the purposes of the MVRA and the Fund and that fosters the compensatory and punitive goals of the statute." *United States v. Hankins*, 858 F.3d 1273, 1280–81 (9th Cir. 2017).  This Court is inclined to direct these sums to the Crime Victims Fund. *Id.* at 1281 (*sua sponte* "redirecting restitution to the Fund was within the district court's power").  In sum, to the extent Venning objects to this Court ordering restitution to victims who have not requested it, it is overruled.

#### D.      Restitution to Jane Doe 9.

Venning objects to the award of restitution as to Jane Doe 9 for conduct occurring in 2019.  PSR Addendum at 9.  He does not object to restitution "following that time."  *Id.*  Venning's conduct in relation to Jane Doe 9 is outlined in PSR ¶¶ 60–67.  It is unclear what Venning's argument is.  The Court will resolve this objection following review of the parties' sentencing memorandums and argument at sentencing.

Accordingly, IT IS ORDERED that the Court enters the following preliminary rulings on Venning's and the United States' objections to the PSR prepared in this case:

1.      Venning's 26th objection, challenging application of § 4B1.5(a) enhancement is OVERRULED;

2.      Venning's 30th objection, relating to restitution, is OVERRULED to the extent it challenges restitution to Jane Doe 16, or to any victim that has not submitted an affidavit or otherwise participated in the restitution process;

3.      Venning's 31st objection, challenging scoring of Venning's 2011 Montana PFMA conviction, is OVERRULED; and

4.       the United States' 1st objection, challenging two-level decrease for acceptance of responsibility, is SUSTAINED, to the extent it was not already resolved by Officer Gasiewicz.

DATED this 15th day of June, 2022.

_____
Dana L. Christensen, District Judge
United States District Court