IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 19-152-BLG-DLC |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| LOUIS GREGORY VENNING, | |
| Defendant/Movant. | |

Pending before the Court is a 28 U.S.C. § 2255 Motion to Vacate Judgment filed by pro se prisoner Louis Gregory Venning's ("Venning"). (Doc. 229.) Venning challenges the 360-month sentence imposed upon him after he pled guilty to four counts contained in the second superseding indictment: Sex Trafficking by Force, Fraud or Coercion; Sex Trafficking of a Minor by Force, Fraud or Coercion; Transportation of a Person with Intent to Engage in Prostitution; and Intent to Distribute Cocaine. Venning now challenges his sentence based upon ineffective assistance of trial counsel and appellate counsel.

## I.    Preliminary Review

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that

the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court is to review

the § 2255 "motion, together with all the files, records, transcripts, and

correspondence relating to the judgment under attack[.]" Rule 4(b), Rules

Governing Section 2255 Proceedings for the United States District Courts. A

district court must summarily dismiss a § 2255 application "[i]f it plainly appears

from the motion, any attached exhibits, and the record of prior proceedings that the

moving party is not entitled to relief." *Id.* A petitioner "who is able to state facts

showing a real possibility of constitutional error should survive Rule 4 review."

*Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996)

("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254

Cases). But the Court should "eliminate the burden that would be placed on the

respondent by ordering an unnecessary answer." Advisory Committee Note

(1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note

(1976), Rule 4, Rules Governing § 2255 Proceedings.

## II.    Background

Venning was charged with fourteen counts of sex trafficking and drug

distribution. *See*, (Doc. 9.) Of note, Counts 1-5, Sex Trafficking by Force, Fraud,

or Coercion, each carried a mandatory minimum sentence of 15 years to life

imprisonment. (*Id.*) Venning was initially represented by CJA Panel Attorney

Palmer Hoovestal ("Hoovestal"). (Doc. 54.) Venning subsequently sought to have

Hoovestal removed as counsel of record due to a purported breakdown in the attorney-client relationship.  (Doc. 76.)  Following a hearing, the Undersigned denied the motion to the extent that Venning alleged the existence of an irreconcilable conflict between himself and Hoovestal but directed that substitute counsel be appointed in the interest of justice.  (Doc. 80.)  CJA Counsel Paul Gallardo ("Gallardo") was then appointed to represent Venning.  (Doc. 81.)  The Government made plea offers, however, Venning rejected them.  *See e.g*., (Doc. 7705 at 156); *see also*, (Doc. 168 at 23:5-16.)  Venning's jury trial was ultimately scheduled for Monday, November 15, 2021, with a final pretrial conference to be held on Friday, November 12, 2021.  (Doc. 97.)

On the morning of the final pretrial conference, Venning advised Gallardo that he wished to change his plea and forego the jury trial.  The parties reached a plea agreement whereby Venning would plead to Counts 5, 6, 7, and 13, in the second superseding indictment.  In exchange, the Government agreed to dismiss the remaining counts and recommend that Venning's offense level be decreased by two levels for acceptance of responsibility, unless Venning was found to have obstructed justice prior to sentencing.  *See*, Plea Agreement (Doc. 155.)  Venning agreed to be responsible for restitution to all victims of his relevant conduct, including victims of counts dismissed by the Government, but reserved his right to challenge the nature and extent of the relevant conduct.  (*Id*. at 3-4.)  On the

afternoon of November 12, 2021, while represented by Gallardo, Venning entered

his guilty pleas before Magistrate Judge DeSoto.  (Doc. 162 & 164.)  The

Undersigned adopted the Findings and Recommendations of Judge DeSoto;

sentencing was scheduled for March 15, 2022. (Doc. 161.)

On December 31, 2021, Gallardo filed a motion on behalf of Venning

seeking to withdraw his guilty pleas.  (Doc. 179.)  The Government opposed the

motion.  (Doc. 180.)  On February 3, 2022, the motion to withdraw was denied.

(Doc. 184.)  The sentencing hearing and related deadlines were continued to April

4, 2022.  (Doc. 186.)

Prior to sentencing, the Government disclosed additional discovery to the

defense and indicated it intended to pursue new charges and that this conduct

would likely affect sentencing arguments and recommendations.  In light of this

development, Gallardo believed a conflict of interest developed and moved to

withdraw as Venning's attorney.  *See*, (Doc. 194.)  The Government did not

oppose the motion.  Gallardo was permitted to withdraw as counsel of record and

Samir Aarab ("Aarab") was appointed to represent Venning through disposition.

(Doc. 198.)

On June 27, 2022, Venning appeared with Aarab for sentencing.  A

Presentence Investigation Report ("PSR") had been prepared.  (Doc. 212.)  The

defense lodged thirty-one objections to the PSR.  *See e.g*., (*Id*. at 59-63).  These

4

objections were addressed in detail in the addendum to the PSR, in a pre-sentencing Order, (Doc. 205), and also during the sentencing hearing itself.  *See*, Sent. Trans. (Doc. 217 at 5-10; 105-115.)  During the sentencing hearing, FBI Special Agent Brandon Walter ("Agent Walter") testified for the Government. (Doc. 217 at 11-96.) Jane Doe One and Jane Doe One's mother also testified.  (*Id.* at 133-139.)  To fulfill the sentencing objectives of 18 U.S.C. § 3553(a), Venning was sentenced to the Bureau of Prisons, for 360 months, followed by a life term supervised release.  *See*, Min. (Doc. 209); Judg. (Doc. 210.)

Venning timely appealed. (Doc. 214.)  Venning generally argued that his right to due process was violated, because the sentence imposed was based upon purportedly unreliable hearsay testimony provided by Agent Walter at the sentencing hearing.  The appeal was dismissed, based upon the valid appeal waiver contained in the plea agreement.  *See, U.S. v. Venning*, Cause No. 22-30114, Ord. (9th Cir. March 16, 2023).

## III.    Analysis

The Court has considered Venning's challenge to the validity of his sentence, as well as the response provided by Gallardo pursuant to this Court's Order.  *See*, (Doc. 236.)  For the reasons explained below, the § 2255 motion will be denied and a certificate of appealability will not issue.

//

### A. Legal Standard

"A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States […] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979)(*quoting Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). In contrast, "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F. 2d 970, 973 (9th Cir. 1981).

### B. Ineffective Assistance of Counsel

Venning waived the right to collaterally attack "any aspect" of his sentence, including a challenge to the sentence in a collateral § 2255 proceeding. (Doc. 155 at 6-7.) The waiver, however, did not preclude Venning from pursuing an action alleging ineffective assistance of counsel. (*Id*. at 9.) Thus, in order for Venning to obtain the relief he seeks, he must assert an ineffective assistance of counsel claim.

Venning claims Gallardo and Aarab were ineffective in various respects.

These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  At this stage of the proceedings, Venning must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Id.* at 690-91.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.

Venning primarily faults Gallardo.  He first alleges that Gallardo provided ineffective assistance of counsel by using race as a factor to pressure Venning into pleading guilty, rather than proceeding to trial.  (Doc. 230 at 4).

He next claims that Gallardo was ineffective for withholding exculpatory

material until after Venning pled guilty. (Doc. 230-1 at 4.) Venning alleges that had Gallardo disclosed this material earlier, he would not have pled guilty. (*Id.*)

Third, Venning claims Gallardo advised him that if he pled guilty he would receive, at most, a 15-year sentence. (*Id.* at 4-5.) Venning states he relied upon this representation and had he known he could receive a 30-year sentence, he would have "taken his chances" and proceeded to trial. (*Id.* at 5.)

Fourth, Venning claims Gallardo was ineffective for failing to disclose that he was subject to being classified as a career criminal. Gallardo never sent a letter or informed Venning of this potential, thus, Venning asserts Gallardo misinformed him of the terms of the plea agreement. (*Id.* at 5-6.)

Finally, Venning states Gallardo provided ineffective assistance by failing to perform an adequate and professional pretrial investigation. (*Id.* at 6.) Specifically, Gallardo failed to question the Government's witnesses, particularly one young woman who admitted that one of the victims, S.L., confessed to her that she was lying in order to get Venning in trouble. (*Id.*)

As to Aarab, Venning argues that he provided ineffective assistance for refusing to present the IAC claims against Gallardo on direct appeal and not mounting a separate challenge to S.L.'s testimony. (*Id.*)

**C. Circumstances Surrounding Change of Plea**

In his response to Venning's motion, Gallardo provides information leading

up to the change of plea proceedings that provides context to consider Venning's allegations.  Gallardo notes that prior to the final pretrial conference on November 12, 2021, Venning had been adamant about having a jury trial.  (Doc. 236 at 2.) Minutes before the final pretrial conference, Venning informed Gallardo that he no longer wished to go to trial and instead wanted to plead guilty.  The parties proceeded with the pretrial conference, but Gallardo advised the Court that a plea agreement may be reached.  The trial remained on the calendar for the following Monday, but the parties were advised that if a plea agreement was made and accepted, the trial would be vacated.  (*Id.*); *see also*, Min. (Doc. 154.)

At 12:57, the United States Attorney's Office e-mailed Gallardo a letter that contained impeachment material.  At this point, Gallardo had not yet met with Venning to review the newly proposed plea agreement.  Gallardo proceeded to visit Venning at the holding cell in the courthouse to discuss both the proposed plea agreement and the newly disclosed impeachment material.  (Doc. 236 at 2.) Gallardo informed Venning of the plea agreement and discussed its implications. Gallardo also read the impeachment material to Venning from his iPhone. Gallardo states that he specifically informed Venning that the proposed plea agreement was not favorable to him, and that at that juncture he may have been better off going to trial.  (*Id.*)  After hearing the content of the impeachment material, Venning laughed and indicated he still wished to plead guilty.  Venning

9

then signed the plea agreement.

A change of plea hearing was held on the afternoon of November 12, 2021; Venning entered guilty pleas pursuant to the plea agreement. *See*, Min. (Doc. 162.) With this background in mind, the Court considers Venning's IAC claims.

### i. Race as a Factor

Venning claims that Gallardo used race as a factor to pressure him into pleading guilty rather than proceeding to trial. (Doc. 230 at 4.) He states that Gallardo suggested to him that because he was black, it was highly unlikely that Venning would receive a fair trial in the Billings Division of the District of Montana. Venning then argues that even if this were true, Gallardo could have utilized voir dire to ensure an impartial jury, but that Gallardo did not even explain the voir dire process to him. (*Id.*); *see also*, (Doc. 230-1 at 3-4.)

The record before the Court defeats Venning's claim that Gallardo performed deficiently. As a preliminary matter, it is simply not credible that Gallardo pressured Venning into pleading guilty. On November 12, 2021, Gallardo was prepared to proceed to trial, as evidenced by the final pretrial conference that occurred. The Government also believed a trial would be happening in three days and had prepared accordingly. As explained by Gallardo, it was Venning that proposed the possibility of a last-minute change of plea. Thus, the parties had to scramble to arrive at a written plea agreement and the

Government had to get approval for the same, all prior to the close of the work day. These factors to not support a finding that Gallardo exerted pressure over Venning to plead guilty.

Gallardo affirms that he and Venning had thoroughly discussed the trial procedure, including voir dire. (Doc. 236 at 5.) This included explaining the demographics of the jury pool in the Billings Division. (*Id*.) And while Gallardo is adamant that he never told Venning that he would not receive a fair and impartial jury due to his race, there was a concern regarding unconscious bias within the jury pool. To combat any such racial bias, Gallardo filed a motion and brief in support seeking to show the Unconscious Bias video from the Western District of Washington to the jury and also to utilize the Western District's criminal jury instruction regarding unconscious bias. *See e.g*., (Docs. 114, 115, 121). Gallardo states that Venning was provided a copy of each of these filings.

The request was ultimately denied, *see* (Doc. 139), with the Undersigned finding that Ninth Circuit model criminal instructions, along with voir dire, were adequate to address any biases without focusing heavily on a single aspect of juror's duty at the expense of other, equally important duties. (*Id*. at 1-2.) This Order specifically advised Venning that each party would be permitted 30 minutes of voir dire, during which he could elect to focus some of his questions on the issue of unconscious bias. (*Id*. at 2)(additional citations omitted).

In addition to the Court's discussion of voir dire and Gallardo's representations that he had discussed the same with Venning, prior counsel also informed Venning of the voir dire procedure. In a January 18, 2021, Advisory Opinion letter to Venning, Hoovestal outlined the voir dire procedure. *See*, (Doc. 77-5 at 167-68.) Magistrate Judge DeSoto also explained voir dire in great detail during Venning's change of plea hearing. (Doc. 168 at 31-36.)

There is no factual support for the claim that Gallardo pressured Venning to plead guilty due to his race or that Venning was unaware of how the voir dire procedure could be utilized during his trial. Consequently, Venning cannot show that Gallardo performed deficiently in this regard. *See, Strickland*, 466 U.S. at 687-88. Because Venning does not meet the first *Strickland* prong, the Court need not consider prejudice. *Stanley v. Schriro*, 598 F. 3d 612, 619 (9th Cir. 2010). The claim will be denied.

### ii. Withholding Exculpatory Evidence

Venning claims that Gallardo was ineffective for withholding "exculpatory evidence" from him. (Doc. 230-1 at 4.) He explains that this evidence consisted of a letter that the government handed to him at the change of plea hearing. It was written by a woman he did not know, in which she disclosed the fact that she was friends with another woman, S.L., who bragged to her about working with the federal government and lying to get Venning in trouble. (*Id.*) Venning claims that

12

Gallardo did not disclose this letter to him until after he pled guilty.  Venning claims that had Gallardo disclosed this material prior to the change of plea hearing, he would not have entered his guilty pleas.  (*Id.*)

As a preliminary matter, this information appears to be, at most, impeachment material, rather than exculpatory evidence.  But the distinction matters not at this juncture, as a review of the factual record defeats Venning's claim.

Gallardo explains that he received the disclosure from the Government via an e-mail from US Attorney's Office, following the final pretrial conference. (Doc. 236 at 2.)  He then went to meet with Venning to share the disclosure and review the proposed plea agreement.  During this meeting, he read the disclosure to Venning from his phone.  (*Id.* at 3.)  Venning indicated that he still intended to plead guilty, despite the disclosure, and signed the plea agreement.

While Gallardo was waiting for the Assistant United States Attorney to sign the plea agreement, he e-mailed his legal assistant and his private investigator to advise them of the developments, as both had been planning to travel to Billings for the trial.  (*Id.*)  Gallardo provided a copy of the e-mail he sent to which a copy of the disclosure was attached.  *See*, (Doc. 236-1.)  In the e-mail, Gallardo wrote: "Check this out.  Venning laughed, and is still set on taking the deal.  Deal is worse than the last because of all the work [the Government] put into the case."  (*Id.*)

13

Thus, Venning's claim that Gallardo withheld the disclosure from him until after the change of plea hearing is simply not credible.

Moreover, Venning subsequently sought to withdraw his guilty pleas. *See e.g.*, (Docs. 178 & 179.)  His argument supporting withdrawal was that he had been placed in a "take-it-or-leave it" position and felt compelled to accept the offer presented.  (Doc. 179 at 4.)  Nowhere in his briefing did he mention that potentially exculpatory and/or newly discovered evidence had been withheld from him and adversely impacted his decision to plead guilty.

It is disingenuous for Venning to now fault Gallardo for his own decision to enter into a plea agreement which he requested at the eleventh hour.  Venning provides no support for the claim, aside from his own conclusory statements.  He has has failed to show that Gallardo performed deficiently in this respect, or that he was prejudiced.  *Strickland*, 466 U.S. at 687-88, 694.  This claim will be denied.

### iii.  Failure to Advise of 30-year Sentence/Career Offender Status

Venning alleges that Gallardo was ineffective relative to the advice he gave regarding a possible sentence.  Venning first claims that Gallardo convinced him that he would receive "no more than 15 years" if he pled guilty.  (Doc. 230-1 at 4-5.)  He states Gallardo told him that he would rather see Venning plead guilty "to 15 years" rather than proceed to trial and get 30 years.  (*Id.*)  Gallardo apparently gave him an article about another defendant charged with similar offenses who

14

received a 30-year sentence after being convicted at a jury trial. (*Id.* at 5.) Venning alleges that when he asked Gallardo to request a sentence lower than 15 years, Gallardo refused because it would seem like they were "begging." (*Id.*)

In a similar vein, Venning also claims that Gallardo provided ineffective assistance for failing to advise him, either in person or in writing, that he was subject to being classified as a career criminal. (*Id.*) Venning maintains that the government agreed that he would receive a 15-year sentence. Venning argues that Gallardo misinterpreted the plea agreement and provided him with inaccurate information. (*Id.* at 5-6.)

In response, Gallardo sates that he never told Venning he would receive a specific sentence. Rather, he explained and discussed the mandatory minimum sentence, the sentencing guidelines, and the § 3553 factors with Venning. (Doc. 236 at 4.) Venning was advised that due to the mandatory minimum 15-year sentence, the Court could not go below that number and the ultimate sentence would result from a consideration of all the requisite factors. (*Id.*) Gallardo advised Venning that a sentence of 30 years, or more, could be imposed and that the last-minute plea deal was not favorable to him. (*Id.*)

In relation to his discussion with Venning on November 12, 2021, Gallardo does not recall the specifics of the guideline calculations. He does acknowledge that before meeting with Venning to discuss the newly offered plea agreement, he

reviewed all applicable sentencing guidelines, the criminal history provisions, and possible enhancements, in order to explain them to Venning before he decided whether or not to accept the plea agreement.  (*Id*. at 5.)  After doing his review and prior to meeting with Venning, Gallardo had a phone call with AUSA's Baucus and Dake to discuss the applicable guidelines and ensure he did not overlook anything; this included determining the worst-case scenario estimates.  (*Id*.)  Gallardo then met with Venning to present the new plea agreement, the sentencing possibilities, the discovery disclosure, and other trial matters.  (*Id*.)

It is undisputed that prior to being charged in this Court, Venning had a substantial criminal record.  *See*, PSR (Doc. 212 at 30-39.)  This history included two prior offenses for promoting prostitution, similar in nature to his federal offenses.  (*Id*. at 34-36.)  Prior to the breakdown of their attorney-client relationship, Hoovestal advised Venning that he calculated his criminal history at a Category VI.  *See e.g*., (Doc. 77 at 7-9.)  Moreover, Hoovestal identified Venning as a potential "Career Offender" under USSG § 4B1.1.  (*Id*. at 9.)  Thus, it appears before Gallardo ever represented Venning, he was aware of his sentencing exposure. *See also*, (Docs. 77-5 & 77-6.)

During the change of plea hearing, Magistrate Judge DeSoto had a lengthy discussion about the operation and application of the Sentencing Guidelines.  *See*, Trans. (Doc. 168 at 42-45.)  Venning advised Judge DeSoto that he did not have

16

any questions about how the guidelines operated.  (*Id*. at 45: 3-5.)  Venning was

also advised by Judge DeSoto that if there was a mandatory minimum sentence at

play, "the guideline range becomes whatever the mandatory minimum is;"

Venning stated that he understood.  (*Id*. at 45: 11-19.)  Gallardo advised Judge

DeSoto that he had calculated what he believed the guideline range might be and

that he and Venning had had adequate time to discuss the matter; Venning agreed.

(*Id*. at 45-46.) It was finally explained to Venning that the guideline range would

ultimately be determined by the Court at sentencing, following the preparation of

the PSR and resolution of the parties' objections.  (*Id*. at 63-67.)

On these facts, Venning's contention that Gallardo assured him that he

would receive a 15-year sentence is simply not convincing.  Venning was aware,

from the face of his plea agreement, that Count 5, Sex Trafficking by Force, Fraud,

or Coercion, carried a mandatory minimum term of imprisonment of 15 years and

a maximum term of life.  (Doc. 155 at 2.)  Count 6, Sex Trafficking of a Minor,

carried a mandatory minimum sentence of 10 years and a maximum term of life.

(*Id*.) Thus, the contentions that Gallardo "convinced" Venning he would receive a

15-year sentence, or possibly even less, is incredible considering that he was facing

up to life sentences on Counts 5 and 6, while also possessing a significant criminal

history.

Moreover, Venning testified under oath that no promises had been made to

17

him that were not contained within the four corners of the plea agreement and that no one coerced him into taking the plea agreement. *See*, (Doc. 168 at 23-24.) Venning also does not expound on his contention that the "government itself agreed I would receive 15 years." (Doc. 230-1 at 5.)

The record certainly contains no such offer or guarantee. In fact, Gallardo's correspondence with his private investigator and paralegal, following the final pretrial conference and prior to the change of plea hearing, demonstrates that the Government was offering a less favorable plea agreement than it had offered months before, given all the preparation that had gone into trial. *See*, (Doc. 236-1.). Thus, the facts surrounding the circumstances under which the parties arrived at the plea agreement and engaged in the change of plea proceedings do not suggest that Gallardo would have been guaranteeing Venning a set sentence of 15 years or that the Government would have agreed to such a sentence.

On the present facts, Venning has not shown that Gallardo performed deficiently under *Strickland*. The facts do not support a finding that Gallardo told Venning that he would receive a 15-year sentence or that Gallardo failed to disclose the extent of Venning's sentencing exposure. These claims will be denied.

### iv.  Failure to Investigate

Venning claims Gallardo was ineffective for failing to adequately investigate

his case. Specifically, Venning claims he asked Gallardo to depose, or at least

question, the Government's witnesses and Gallardo advised him that he could not

do so. (Doc. 230-1 at 6.) Venning believes Gallardo particularly should have

questioned the young woman that was the subject of the late disclosure, as she

admitted that one of the alleged victims, S.L., confessed to lying in order to get

Venning in trouble. Venning asserts he and S.L. had previously been in an

altercation. (*Id.*)

In response, Gallardo states he investigated and litigated the case zealously

and professionally. (Doc. 236 at 6.) Following the removal of Hoovestal, Gallardo

continued working with the same private investigator, Craig Campbell, who had

assisted Hoovestal. The two worked closely, along with Gallardo's paralegal,

reviewing discovering, cross-referencing each witness statement, and creating

tables for each witness concerning inconsistent statements and impeachment

points. (*Id.* at 7.)

Gallardo explains that he never told Venning they could not depose

witnesses, but that to do so they would need to file a motion with the Court and

present exceptional circumstances to warrant the deposition. (*Id.*) Gallardo

elected not to interview witnesses as a tactical move, after consultation with

Venning. There were avenues of impeachment available as to several witnesses,

based upon the existing interviews. Gallardo explained to Venning that in this

19

particular case impeaching witnesses at trial, would likely be more beneficial than engaging in a pretrial interview. Gallardo reasoned that a pretrial interview may assist the witnesses in preparing or cleaning up their trial testimony. (*Id.*) Gallardo was also concerned that it could alert the Government to trial strategies and, in some instances, may trigger the filing of motions in limine to prevent certain lines of questioning. (*Id.*)

"A lawyer who fails adequately to investigate, and to introduce into evidence, information that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Lord v. Wood*, 184 F.3d 1083, 1093 (9th Cir. 1999) (internal quotation marks and alteration omitted). Nevertheless, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. "A disagreement with counsel's tactical decision does not provide the basis for declaring that the representation was constitutionally deficient." *Raley v. Ylst*, 470 F.3d 792, 799 (9th Cir. 2006). Because Gallardo's decision not to depose or interview witnesses in this case was strategic, Venning fails to show it fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

But even if this Court were to find that counsel performed deficiently under

*Strickland's* first prong, Venning has not shown the attendant prejudice.  The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Venning provides no explanation as to how he believes the result of these proceedings would have been different had Gallardo performed pretrial interviews or depositions.  He does not explain what information he believes Gallardo would have obtained and how that information would have benefited him.

Additionally, Venning specifically faults Gallardo for not interviewing the witness who was the subject of the 11/12/21 disclosure, but Gallardo had no opportunity to do so between learning of her statement that morning and Venning's change of plea that afternoon.  Following Venning's guilty pleas, the matter was moot.  Moreover, even if this individual could be impeached, the Government was prepared to call 20 of Venning's victims at trial, along with approximately a dozen additional witnesses.  Thus, Venning's mere speculation relative to one potential witness does not suffice to undermine the entire case against him or establish *Strickland* prejudice. *See e.g., Clark v. Lewis*, 1 F. 3d 814, 823 (9th Cir. 1993). Because Venning fails to show that counsel performed deficiently or that he was

prejudiced under *Strickland*, this claim is also denied.

### v. IAC of Appellate Counsel

Venning claims Aarab was ineffective as appellate counsel for failing to raise the IAC claims against Gallardo on direct appeal. (Doc. 230-1 at 6.) Specifically, Venning contends Aarab should have looked into the "exculpatory material" surrounding S.L.'s disclosure. Aarab should have investigated this information further to see if it could have been used as a basis for a motion to dismiss the entire indictment based upon purportedly perjured testimony. (*Id.*)

Venning has failed to show what additional information could have been gleaned from S.L. and how that would have had an overall impact on this matter. His suggestion that S.L.'s disclosure would have provided a basis for Aarab to move to dismiss the entire matter is far-fetched, at best. This suggestion is based upon nothing more that Venning's own conjecture.

Moreover, Aarab explained to Venning that IAC claims are generally not appropriate for direct review and should be raised in postconviction or collateral proceedings. *See*, (Doc. 230-1 at 9, 11, 13.) Thus, it was not ineffective for him to elect not to include the IAC claims against Gallardo in his direct appeal. As explained herein, these IAC claims also lack merit. For both of these reasons, Venning cannot show that Aarab performed unreasonably by electing not to pursue these claims on appeal.

Effective legal assistance does *not* mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983). "Nothing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Id.* at 754. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751–52. Consequently, although it is "possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim, ... it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Or put another way, Aarab did not provide ineffective assistance by electing not to pursue meritless claims on appeal. *See Gonzalez v. Knowles*, 515 F. 3d 1006, 1016 (9th Cir. 2008). This claim will also be denied.

For all of the reasons set forth herein, Venning's § 2255 motion will be denied and dismissed.

## IV.    Certificate of Appealability

A movant may appeal a district court's dismissal of a § 2255 motion only after obtaining a certificate of appealability from the district court or the circuit court. 28 U.S.C. § 2253( c)(1)(B). "A certificate of appealability may issue …

23

only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253( c)(2).  This standard is satisfied if "jurists of reason could disagree with the district court's resolution of the constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(*citing Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).  Under this standard, the Court concludes that Venning is not entitled to a certificate of appealability.  No reasonable jurist would find debatable Venning's failure to demonstrate entitlement to relief on the claims presented in his § 2255 Motion.

Accordingly, IT IS ORDERED:

1.  Venning's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 229) is DENIED.

2.  A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Venning files a Notice of Appeal.

3.  The clerk shall ensure that all pending motions in this case and in CV 23-118-BLG-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Venning.

DATED this 7th  day of April, 2025.

*/s/ Dana L. Christensen*
Dana L. Christensen
United States District Court Judge

24